Philip A. **FEIGIN**, Securities Commissioner for the State of Colorado, Plaintiff–Appellee,

v.

**SECURITIES AMERICA, INC.**, Defendant–Appellee,

and

Alexa Group, Ltd., James P. Dufficy, and Eva F. Balassa, Defendants,

and Concerning Charles Patterson, Patricia Patterson, Edward Seevers, and Tamera Seevers, Applicants for Intervention–Appellants.

No. 98CA0718.

Colorado Court of Appeals, Div. I.

Aug. 5, 1999.

Certiorari Granted Feb. 7, 2000.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S.1998.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Richard Djokic, First Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Kutak Rock, John H. Bernstein, John P. Jones, Matthew J. Rita, Denver, Colorado, for Defendant–Appellee.

John F. Head, P.C., John F. Head, Ian S. Karpel, Denver, Colorado, for Applicants for Intervention–Appellants.

Opinion by Judge CRISWELL.

Applicants for intervention, Charles and Patricia Patterson and Edward and Tamera Seevers (investors), appeal from the order denying their motion to intervene in the civil enforcement action filed by plaintiff, Philip A. Feigin, as Securities Commissioner for the State of Colorado (the Commissioner), against defendants, Alexa Group, Ltd., James P. Dufficy, Eva F. Balassa, and Securities America, Inc. (SAI). We vacate the order denying intervenors' motion and remand with

directions to permit intervention. We also vacate, pending consideration of investors' objections to the settlement between the Commissioner and SAI, the order approving the settlement agreement between the Commissioner and SAI insofar as that agreement purports to establish a settlement procedure for claims possessed by any investor.

Dufficy, who was a licensed Colorado securities salesperson, and his wife, Balassa, engineered a "Ponzi" scheme whereby they offered and sold securities and investments through Alexa Group, Ltd. Dufficy was an authorized representative of SAI, a Nebraska broker-dealer, which also holds a Colorado license, until December 19, 1995, but he continued the fraudulent scheme at least through March 1996. Altogether, his investors lost in excess of $500,000.

Section 11–51–602, C.R.S.1998, authorizes the Commissioner to bring an action to enjoin violations of the state securities act. Section 11–51–604, C.R.S.1998, authorizes private parties to sue for damages for securities fraud. However, § 11–51–602 also authorizes the Commissioner, in an action for an injunction, to assert "a claim for damages under" § 11–51–604 "on behalf of some or all of the persons" injured by the securities fraud.

When the fraud here was discovered, the Commissioner commenced administrative proceedings against SAI and Dufficy to have administrative sanctions imposed upon them. At the same time, pursuant to the authority granted to him under § 11–51–602, he also brought a civil enforcement proceeding against defendants in which he sought an injunction against future violations as well as damages on behalf of the investors under § 11–51–604.

A few months later, a default judgment in favor of the Commissioner was entered against the defendants other than SAI for $597,000, including some $74,000 in attorneys fees. This judgment represented the losses of all investors, both those investing before and those investing after Dufficy ceased being SAI's authorized agent.

Then, about six months after the Commissioner initiated the civil enforcement and administrative proceedings, certain investors brought a class action against defendants to recover damages under § 11–51–604. Shortly thereafter, the Commissioner and SAI commenced settlement negotiations, which contemplated settling both the administrative proceeding and the § 11–51–602 lawsuit. Before the settlement agreement was finalized, however, certain of the named plaintiffs in the class action, together with other investors who were not named parties, but who were members of the class who had invested after Dufficy ceased being SAI's representative, sought to intervene in the enforcement action on a limited basis solely to contest and to object to the terms of the proposed settlement agreement.

In the meantime, SAI, a defendant in the class action, convinced the class action court to stay all proceedings in that case pending approval of the settlement agreement in the Commissioner's lawsuit. While this record does not evidence it, we were told in oral argument that that stay order has now been lifted.

Shortly after this motion to intervene was filed, the Commissioner and SAI filed a copy of their proposed settlement agreement and requested the court to approve its terms. The court, without holding a hearing and without stating any reasons for either of its actions, entered orders denying the request for intervention and approving the settlement agreement.

Investors assert that the trial court improperly denied them their right to be heard with respect to the fairness of the terms of the proposed settlement agreement that could have, and probably will have, a substantial adverse impact upon their rights. We agree.

The proposed settlement agreement consists of two different agreements. In the first agreement, SAI agrees to have certain conditions and limitations imposed upon its Colorado broker-dealer license, which agreement is to be made an order of the court and enforceable by it. Investors raise no objections to any of those conditions and limitations.

By the second agreement, which purports to settle the Commissioner's § 11–51–604 claim for damages on behalf of the investors, the parties agree to the establishment of a "claims procedure" using a court-appointed administrator "to determine valid and supported claims of qualifying ... investors...." Under this procedure, the Commissioner is to provide to the administrator the names and addresses of all persons known to have invested with Dufficy, notice is to be given to each of those persons, and those persons must file claims with the administrator before a specified date. Any claim not submitted to the administrator by that date "will not be considered."

Under the agreement, all investors who invested before December 19, 1995 (the date Dufficy ceased being SAI's representative), whose claims are approved, are to be paid their "net losses," i.e., the amount actually invested, not including "interest, lost profits, attorney fees, compensatory damages, punitive damages, costs of collection, or any other claim...."

Any person who invested after that date will have a claim approved only if that person can prove that he or she "reasonably believed Dufficy was affiliated with SAI at the time of his/her investment, and that the investor did not know nor reasonably believe Dufficy was no longer affiliated with SAI at the time...." In addition, with respect to these investors, the administrator is given authority to award "less than 100%" of those investors' net losses, if the administrator determines that "it is appropriate in his discretion...." However, the agreement does not describe any criterion to be used by the administrator to determine when such a lesser award would be "appropriate."

Finally, if an investor's claim is approved, that investor will be paid only if there is tendered to SAI both a release of the claim against it, as well as an "assignment of claims" (presumably against Dufficy) and any other document that may be agreed upon by the Commissioner and SAI. Anyone not providing such documents will not be paid, in which event any rights or claims against SAI "shall not be impaired or otherwise affected as a matter of law."

## I.

A person has the right to intervene in an action if: (1) the person claims "an interest relating to the property or transaction" that is the subject of the action; (2) the disposition of the action may "as a practical matter impair or impede his ability to protect that interest"; and (3) his interest is not "adequately represented" by existing parties. C.R.C.P. 24(a)(2); *United Airlines, Inc. v. Schwesinger*, 805 P.2d 1209 (Colo.App.1991). In addition, a petition to intervene must be "timely," and C.R.C.P. 24(c) requires that the motion be accompanied "by a pleading setting forth the claim or defense" for which intervention is sought.

Likewise, even if there is no right to intervene, a person may be permitted to do so if that person can demonstrate that his or her claim or defense and the main action have a common question of law or fact. C.R.C.P. 24(b).

■ A request for permissive intervention is addressed to the trial court's sound discretion, and its decision upon the request is reversible only for an abuse of that discretion. *Grijalva v. Elkins*, 132 Colo. 315, 287 P.2d 970 (1955).

■ Similarly, the question whether a petition for intervention, whether permissive or of right, has been filed in a timely manner is also addressed to that court's sound discretion. *Law Offices of Andrew L. Quiat, P.C. v. Ellithorpe*, 917 P.2d 300 (Colo.App.1995).

With respect to the other factors required to be established to authorize intervention by right, however, the courts are not of a single mind with respect to the standard of review to be applied to a trial court's decision upon the subject. Many have held that the question whether these factors have been established is to be reviewed by an appellate court on a *de novo* basis as an issue of law. *See Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994); *Grubbs v. Norris*, 870 F.2d 343 (6th Cir.1989). Indeed, even some courts that have adopted an abuse of discretion standard of review have, nevertheless, stated that this review is "more stringent" than is the review

of a decision upon a request for permissive intervention. *Brody v. Spang*, 957 F.2d 1108, 1114 (3d Cir.1992).

Several years ago, our supreme court seemed to say that the standard of review in such cases is for an abuse of discretion. However, there was no extended discussion of the issue, and in that case, the court proceeded to announce a rule of law, *i.e.*, that, absent fraud, collusion, bad faith, or the like, a "taxpayer *cannot* intervene as a matter of absolute right" in an action commenced by a municipality. *Denver Chapter of Colorado Motel Ass'n v. Denver*, 150 Colo. 524, 528, 374 P.2d 494, 496 (1962) (emphasis supplied). Consequently, we do not consider that that opinion constitutes an authoritative resolution of this issue.

■ Further, given both the nature of the other factors and the fact that, if those factors are established, the applicant *must* be allowed to intervene, we conclude that the questions whether the applicant has an interest related to the subject of the litigation, whether that interest may be impaired or impeded if intervention is not allowed, and whether the present parties adequately represent that interest, are all questions to be reviewed *de novo* on appeal. And, such review is particularly appropriate if, as here, the trial court has made no findings with respect to any of these issues. *See Ceres Gulf v. Cooper*, 957 F.2d 1199 (5th Cir.1992) (in the absence of trial court findings even question of timeliness is reviewed *de novo*).

## II.

■ Here, the timeliness of investors' motion has not been contested. However, the Commissioner argues that their motion was defective because a pleading was not attached to it setting forth the basis for their intervention. We disagree.

Although a pleading was not attached to investors' motion, they were not asserting a "claim or defense" in the sense in which those terms are normally used; they sought only to present objections to the proposed settlement agreement. Moreover, the motion itself contained sufficient allegations to inform the court and the parties of the basis

for the requested intervention and of the general nature of their objections.

Under such circumstances, the failure to attach a pleading was harmless in light of the limited nature of the requested intervention. *See Beckman Industries, Inc. v. International Insurance Co.*, 966 F.2d 470 (9th Cir.1992) (intervention motions without a pleading may be approved if the court is otherwise apprised of the grounds for the motion; technical objection may be rejected when petition fully states the legal and factual grounds for intervention). *See also Public Service Co. v. Blue River Irrigation Co.*, 753 P.2d 737 (Colo.1988).

## III.

■ The Commissioner also contends that intervenors do not have an interest relating to the property or transaction that is the subject of the action. We reject this contention.

■ The existence of the interest of a proposed intervenor should be determined in a liberal manner. It is the better practice to apply the rule relating to intervention in such a way that, whenever possible and compatible with efficiency and due process, issues relating to the same transaction can be resolved in the same lawsuit and at the trial court level. *O'Hara Group Denver, Ltd. v. Marcor Housing Systems, Inc.*, 197 Colo. 530, 595 P.2d 679 (1979).

Here, it was investors who were defrauded, and § 11–51–604 gives to each of them a statutory claim for the recovery of damages (not to mention a common law claim for fraud). The Commissioner, in contrast, possesses no claim for damages; he can assert a claim for damages only because § 11–51–602 authorizes him to do so when he brings an injunctive action. When he asserts such a claim, however, that statute requires the claim to be asserted "on behalf" of the parties defrauded. At least in this sense, therefore, the Commissioner is acting as a fiduciary for investors, and but for investors' possession of valid claims, the Commissioner could assert no claim.

Under these circumstances, the Commissioner approaches frivolity in arguing that

the investors have no "interest relating to ... the transaction" that is the subject of his claim for damages.

## IV.

■ Likewise, we reject the Commissioner's assertion that he is adequately representing all of investors' interests.

Once an applicant for intervention demonstrates an "interest relating to the transaction" that is the basis for the ongoing lawsuit, intervention should be allowed if it appears that all of the applicant's interest may not be adequately represented by those already parties to that lawsuit. *O'Hara Group Denver, Ltd. v. Marcor Housing Systems, Inc., supra.*

Here, the law mandates that the Commissioner's primary responsibility is to protect the *public* from securities' fraud. His discretionary authority to attempt to obtain recompense for defrauded investors is only ancillary and secondary to that principal responsibility. Consequently, there may be occasions when the Commissioner's interest in performing his primary responsibility may not coincide with a defrauded investor's interest in achieving full compensation for the harm done to him or her.

For example, as we have noted, the proposed settlement between the Commissioner and SAI consists of two parts—one part designed to prevent future fraud and the other designed to obtain compensation for past wrongs. Yet, it is clear from the face of the proposed agreement that it is not designed to provide full compensation to the defrauded investors. Indeed, the amounts to be paid to the investors pursuant to the agreement will not include even interest on the amounts invested by them.

The court held no hearing upon the parties' request to approve this agreement, so this record contains no explanation by the Commissioner of why he has agreed to such terms. It is certainly conceivable, however, that, to obtain SAI's agreement to the conditions and limitations upon its license, which the Commissioner has apparently concluded is necessary to prevent future fraud, monetary concessions were required to be made to

SAI. If so, considering the Commissioner's primary responsibility, we would not view the grant of such concessions as unreasonable or antithetical to that primary responsibility. Yet, reaching such an understanding with SAI would certainly not constitute an adequate representation of the defrauded investors' interests. *See National Farm Lines v. Interstate Commerce Commission,* 564 F.2d 381 (10th Cir.1977) (it is an impossible task for a governmental agency to protect both the interest of the public and also the private interests of the petitioners in intervention).

## V.

■ We are also convinced that, contrary to the Commissioner's allegation, the execution and implementation of the proposed settlement agreement would impede or impair, from a practical standpoint, investors' ability to protect their interests.

The Commissioner's contrary assertion is based primarily, but not exclusively, upon his contention that, if an investor chooses not to present a claim to the administrator, the agreement provides that that claim will not be impaired, so that the investor may assert that claim in a court proceeding or before some other appropriate tribunal. However, we are not convinced that the proposed agreement necessarily bears this interpretation.

There is no specific "opt out" provision to be found in this agreement, nor are there any specific provisions describing the status of a claim of a defrauded investor who does not file a claim with the administrator. On the contrary, the agreement provides that, if a claim is not filed by the deadline set, it will not be "considered." Arguably, therefore, the agreement contemplates that the system adopted by the agreement for the *consideration and approval* of claims is to be *exclusive.*

The agreement does provide that no investor will be entitled to *payment* under its terms unless that investor releases all possible claims against SAI and assigns to it claims against other parties. If any investor fails to do so, his or her claim will not be "impaired." However, no investor is entitled

to payment, in any case, unless a prior claim is *filed and approved.* Hence, this provision can be interpreted to apply only to those investors who have had their claims approved by the administrator and not to those who never sought the administrator's approval. Under such an interpretation, prior approval by the administrator is required, but proceedings to obtain compensation for an approved claim can be pursued before other tribunals.

We do not suggest that the foregoing interpretation is the only one or, indeed, the proper one. At the same time, however, we also cannot say that the Commissioner's interpretation is the one that would be adopted by a court in litigation between SAI and one or more defrauded investors.

Further, if our suggested interpretation is ultimately determined to be proper, the implementation of this agreement would most certainly impair the ability of any investor not participating in this claim procedure to protect his or her interest.

In addition, the election whether to participate in this claim procedure presents a practical Hobson's choice to the investors. They must elect either to receive less than full compensation due them or to engage in additional litigation. While any claimant entering into a compromise settlement agreement faces a similar choice, here, the concessions to be made by investors have been determined by parties who do not adequately represent their interests.

At the same time, if a sufficient number of investors should elect to accept the benefits of the proposed agreement, the ability of the other investors to protect their interests may well be impaired. Not only would the numerosity requirement of C.R.C.P. 23 be defeated if a sufficient number of potential class members elect to participate in the Commissioner's procedure, but even if there were still a sufficient number to constitute a class, a reduction in their numbers would cause each of the remaining members to be faced with increased per capita costs and fees.

Under similar circumstances, the federal courts have authorized intervention by all interested parties to present objections to a proposed settlement agreement that would affect them. *See Black Fire Fighters Ass'n v. City of Dallas,* 19 F.3d 992 (5th Cir.1994); *United States v. Detroit International Bridge Co.,* 7 F.3d 497 (6th Cir.1993).

Similarly, in *Bruce W. Higley Defined Benefit Annuity Plan v. Kidder, Peabody & Co., Inc.,* 920 P.2d 884 (Colo.App.1996), a division of this court held that an affected class member had a right to intervene in a class action to register objections to a settlement agreement affecting the class. While the instant action is not a class action, nevertheless, the Commissioner in this action is, like a class representative, an agent and representative for all of the investors for whose benefit he filed his complaint. And, the rights of those investors to be heard with respect to that agreement before it is finalized, while not governed by C.R.C.P. 23, should be honored.

We do not consider the cases cited by the Commissioner, such as *Securities & Exchange Commission v. Prudential Securities, Inc.,* 136 F.3d 153 (D.C.Cir.1998), to be persuasive upon this issue. There, a settlement agreement between the Securities and Exchange Commission (SEC) and a broker-dealer established a completely voluntary claims processing procedure that contemplated binding arbitration. The investors who later sought to intervene registered no objections to the agreement, but entered into the arbitral process. However, when they received offers or arbitration awards that they felt to be inadequate, they sought to intervene on behalf of a class of investors, claiming that the broker-dealer was not complying with the settlement agreement. Because the agreement specified that, after the consent decree was entered approving it, no one except the SEC could undertake proceedings to enforce that agreement, *see Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), the court held that the investors, having no right of enforcement, had no legal interest to protect.

Even if we assume, without deciding, that the Colorado statute and rules would bear a similar interpretation, nevertheless, there is a substantial difference between the interest

that a defrauded investor has in the underlying claim being asserted on his or her behalf, before that claim has been settled pursuant to a court-approved agreement, and any supposed interest in asserting some other claim based upon an alleged violation of the agreement itself. This case involves the former interest, not the latter.

Here, investors sought to object to the proposed agreement *before* it was approved. We conclude that C.R.C.P. 24(a) permits them to do so. Whether, after approval, they would also have the right to seek to enforce that agreement is an issue that we need not and do not address.

## VI.

Finally, because the trial court held no hearing upon the question of its approval of the proposed agreement, it is impossible for us to consider any of investors' objections on their merits. Rather, we must remand the cause to that court for its consideration of those objections, after hearing such evidence and argument as it may deem appropriate.

The order denying intervention is vacated. To the extent that the settlement agreement purports to establish a claims procedure for processing individual investors' claims, the order approving that agreement is also vacated, and the cause is remanded to the trial court with directions to enter an order authorizing investors to intervene for the sole purpose of contesting and objecting to the settlement agreement and for further proceedings consistent with the views contained in this opinion.

Judge METZGER and Judge DAVIDSON concur.