Philip A. FEIGIN, Securities Commissioner for the State of Colorado, Petitioner,

v.

ALEXA GROUP, LTD.; James P. Dufficy; Eva F. Balassa; and Securities America, Inc., Defendants,

and

Charles Patterson, Patricia Patterson, Edward Seevers, and Tamera Seevers.

No. 99SC728.

Supreme Court of Colorado, En Banc.

March 5, 2001.

Ken Salazar, Attorney General, M. Ashley Albright, First Assistant Attorney General, Patricia A. Cooper, Assistant Attorney General, Business and Licensing Section, Denver, CO, Attorneys for Petitioner.

Kutak Rock LLP, John H. Bernstein, John P. Jones, Matthew J. Rita, Denver, CO, Attorneys for Securities America, Inc.

John F. Head, P.C., John F. Head, Ian S. Karpel, Heather R. Hanneman, Denver, CO, Attorney for Respondents.

Perkins Coie LLP, Donald Salcito, Stephen E. Abrams, Sean Steward, Denver, CO, Attorneys for Amicus Curiae North American Securities Administrators Association.

Justice RICE delivered the Opinion of the Court.

We granted certiorari to determine whether the court of appeals erred in applying a de novo standard of review, in allowing the Investors to intervene, and whether, by doing so, it improperly created a fiduciary or agency relationship between the Colorado Securities Commissioner (the "Commissioner") and the Investors in enforcement proceedings under section 11–51–602, 3 C.R.S. (2000). We now hold that a de novo standard of review is appropriate when reviewing a trial court's denial of a motion to intervene under C.R.C.P. 24(a). We further hold that the Investors had a valid interest in the civil enforcement action, but they were neither impaired nor impeded in their ability to protect that interest. We note that in holding otherwise, the court of appeals mischaracterized the role of the Commissioner by imply-

ing a fiduciary or agency relationship between the Commissioner and the Investors. Finally, we determine that the Investors' interests were adequately represented by the Commissioner. Thus, we reverse the court of appeals' judgment that the Investors were entitled to intervene as a matter of right under Rule 24(a)(2).

## I. FACTS AND PROCEDURAL HISTORY

From March 1993 to July 1996, James Dufficy and Eva Balassa, general partners of Alexa Group, Ltd. ("Alexa"), allegedly engineered a "Ponzi" scheme whereby they sold securities and investments through Alexa, and either personally misappropriated or otherwise lost in excess of $500,000 of their investors' funds. Dufficy was licensed as a securities sales representative through Securities America, Inc. ("SAI"), the securities broker-dealer through which Alexa had established a securities brokerage account.

In June 1997, the Commissioner brought a civil enforcement action against Alexa, Dufficy, Balassa and SAI under section 11–51–602, seeking an injunction against future violations and damages for the defrauded investors. In January 1998, the Commissioner commenced settlement negotiations to resolve only the claims against SAI. As a result of these negotiations, a Stipulation for Order Settling Claims as to SAI ("Stipulation"), and a proposed Order Settling Claims Concerning SAI ("Order") were filed in February 1998.

The Stipulation provided for a claims process whereby all the Alexa investors who had invested funds during the period in which Dufficy was affiliated with SAI could be awarded compensation for their losses. In exchange for receiving payment under the Stipulation, SAI could require investors to provide it with a release of all other claims against it. The rights and claims of any investor who elected not to provide such a release, however, would not be impaired or otherwise affected by the Stipulation.

The Investors filed a motion to intervene in the Commissioner's civil enforcement action in order to contest the settlement reached by the Commissioner and SAI.[1] The Commissioner argued that the Investors had failed to satisfy the requirements of C.R.C.P. 24(a)(2) and therefore were not entitled to intervene. Without citing any reasons for its ruling, the trial court denied the Investors' motion and entered the Order, thus approving the settlement agreement between the Commissioner and SAI.

On appeal, the court applied a de novo standard of review in holding that (1) the Investors had an interest in the civil enforcement action; (2) their interest was not adequately represented by the settlement agreement; and (3) the execution and implementation of the settlement agreement would impede or impair the Investors' ability to protect their interests. *Feigin v. Securities America, Inc.*, 992 P.2d 675, 679–80 (Colo.Ct.App.1999). The court of appeals thus concluded that under C.R.C.P. 24(a), the Investors were permitted to intervene as a matter of right. *Id.* at 682. The court of appeals held that because the trial court had not held a hearing on the question of its approval of the proposed agreement, it was impossible for the court to consider the Investors' objections on their merits. *Id.* Therefore, the court remanded the case and vacated the trial court's order denying intervention. *Id.* The court also vacated the order approving the settlement agreement to the extent that the agreement established a claims procedure for processing individual investors' claims. *Id.*

We granted certiorari to determine whether the court of appeals applied the correct standard of review and whether the court properly allowed the Investors to intervene as a matter of right. We also granted certiorari on the issue of whether the court of appeals, in determining that the Investors had an interest in the civil enforcement action, created a fiduciary or agency relationship between the Commissioner and defrauded investors.[2]

---

1. The Investors and other victims of the Ponzi scheme had also filed a separate private class

action in the Denver District Court in December 1997.

2. We granted certiorari on the following issues:

## II.  ANALYSIS

We have not previously addressed whether a defrauded investor may intervene in a civil enforcement action brought by the Commissioner under section 11–51–602, nor have we directly addressed the proper standard of review to apply to a trial court's denial of a motion to intervene under Rule 24(a).  As such, this case presents an opportunity for us to address these issues of first impression, as well as to clarify the role of the Commissioner in bringing a civil enforcement action under section 11–51–602.

### A.  Standard of Review

■  Under C.R.C.P. 24, a non-party may intervene in a civil action as a matter of right, or by way of a permissive intervention.[3]  One who timely files an application may intervene as a matter of right if a statute confers an unconditional right to intervene or (1) the applicant claims an interest in the subject matter of the litigation; (2) the disposition of the case may impede or impair the applicant's ability to protect that interest; and (3) the interest is not adequately represented by existing parties.  C.R.C.P. 24(a); *People v. Ham*, 734 P.2d 623, 625 (Colo.1987); *The Dillon Cos., Inc. v. City of Boulder*, 183 Colo. 117, 120–21, 515 P.2d 627, 628–29 (1973); *Higley v. Kidder, Peabody & Co.*, 920 P.2d 884, 890 (Colo.Ct.App.1996).

■  The denial of a motion to intervene as a matter of right is a final and appealable order.  *O'Hara Group Denver, Ltd. v. Mar-cor Housing Sys., Inc.*, 197 Colo. 530, 540, 595 P.2d 679, 686 (1979).  Furthermore, Rule 24 should be liberally interpreted to allow, whenever possible and compatible with efficiency and due process, issues related to the same transaction to be resolved in the same lawsuit and at the trial court level.  *Id.* at 541, 595 P.2d at 688.  However, Colorado courts have never specifically determined the standard of review that should apply when evaluating a trial court's denial of a Rule 24(a) motion to intervene.

In 1962, this court reviewed a Rule 24 motion brought by taxpayers to intervene in an action brought by the city.  *Denver Chapter of the Colo. Motel Ass'n, Inc. v. City & County of Denver*, 150 Colo. 524, 374 P.2d 494 (1962).  There, we held that "it was a matter which rested within the discretion of the trial court as to whether the petition for intervention should be granted.  There was no showing upon which the intervention of petitioners should have been granted as a matter of right."  *Id.* at 527, 374 P.2d at 495.  In doing so, however, we did not explicitly adopt a standard for reviewing the trial court's denial of a Rule 24(a) motion.  Instead, we merely applied the substantive requirements of Rule 24(a) and concluded that because the taxpayers had admitted in their briefs that their interests were adequately represented, intervention under Rule 24(a) should not have been permitted.

While the abuse of discretion standard for reviewing Rule 24(b) permissive intervention denials has been well settled in Colorado and

1.  Whether, contrary to § 11–51–602, 3 C.R.S. (1999), of the Colorado Securities Act, the court of appeals' opinion erroneously creates a fiduciary or agency relationship between the Securities Commissioner and investors in enforcement proceedings initiated exclusively by the Securities Commissioner.

2.  Whether the court of appeals' opinion impermissibly creates grounds for investors to intervene as a matter of right under C.R.C.P. 24(a)(2) in civil enforcement proceedings initiated under § 11–51–602, 3 C.R.S. (1999).

3.  Whether the court of appeals erred in applying a de novo standard of review.

**3.**  Although we need not address issues raised only by amicus curiae, *see Gorman v. Tucker*, 961 P.2d 1126, 1131 (Colo.1998), we note that amicus curiae's argument that intervention under Rule 24 in a civil enforcement action under section 11–51–602 is inappropriate because it is a quasi-criminal proceeding lacks merit.  A civil enforcement action by the government is clearly distinguishable from a criminal prosecution.  *See* Kevin A. Gaynor, et al., *Environmental Criminal Prosecutions: Simple Fixes for a Flawed System*, 3 Vill. Envtl.  L.J. 1, 2 (1992) (noting that "although civil enforcement actions by the government can have serious consequences, including monetary penalties; the consequences of a criminal prosecution or investigation are even more significant, including substantial monetary penalties, the possibility of hard jail time, and a recognized 'stigma of criminality' ").  Thus, amicus curiae's reliance on *People v. Ham*, 734 P.2d 623, 626 (Colo.1987), which involved a motion to intervene in criminal sentencing proceedings, is misplaced.

elsewhere,[4] in the thirty-eight years following *Denver Chapter*, this court has not clarified the proper standard for reviewing a Rule 24(a) denial of a motion to intervene as a matter of right.[5]

■ Courts in other jurisdictions are split as to the standard governing a review of the substantive requirements for a Rule 24(a) intervention.[6] *Alameda Water & Sanitation Dist. v. Browner*, 9 F.3d 88, 89–90 (10th Cir.1993). While some courts have concluded that an abuse of discretion standard is appropriate,[7] others have held that a trial court's denial of a Rule 24(a) motion should generally be reviewed de novo. *Jordan v. Mich. Conference of Teamsters Welfare Fund*, 207 F.3d 854, 862 (6th Cir.2000); *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir.1997); *Alameda Water*, 9 F.3d at 90; *Doe v. Duncanville Indep. Sch. Dist.*, 994 F.2d 160, 167 (5th Cir.1993); *United States ex rel.*

*McGough v. Covington Tech. Co.*, 967 F.2d 1391, 1393–94 (9th Cir.1992).[8] Other courts have adopted variations on the two approaches. *Twelve John Does v. Dist. of Columbia*, 117 F.3d 571, 576 (D.C.Cir.1997) (holding that an abuse of discretion standard governs whether to allow intervention under Rule 24(a) to the extent that such a decision turns on the adequacy of representation); *Getty Oil v. DOE*, 865 F.2d 270, 274 (Temp.Emer.Ct.App.1988) ("To the extent that a district court's conclusions involve questions of law, we will review them de novo; to the extent that they concern factual details and pragmatic consequences of its decision, however, we will follow [an] abuse of discretion standard.").

While courts adopting an abuse of discretion standard have reasoned that the factual nature of the issues presented by a Rule 24(a) analysis warrants a more relaxed standard,[9] courts adopting a de novo standard of

4. *Roosevelt v. Beau Monde Co.*, 152 Colo. 567, 569, 384 P.2d 96, 103 (1963) (holding that an abuse of discretion standard should apply in Rule 24(b) permissive intervention cases); *Standard Heating & Air Conditioning Co. v. City of Minneapolis*, 137 F.3d 567, 573 (8th Cir.1998) (holding that the standard of review for denial of permissive intervention is abuse of discretion); *Twelve John Does v. Dist. of Columbia*, 117 F.3d 571, 576 (D.C.Cir.1997) (holding that the abuse of discretion governs the determination of whether to allow permissive intervention under Fed.R.Civ.P. 24(b)); *Chapman v. Manbeck*, 931 F.2d 46, 48 (Fed.Cir.1991) (holding that because permissive intervention under Rule 24(b)(2) is discretionary, in the absence of an abuse of discretion, a court should uphold the district court's decision).

5. *See e.g., Roosevelt*, 152 Colo. at 579, 384 P.2d at 103 (concluding that "the judgment of the trial court denying intervenors' motion was erroneous," without specifically articulating a standard of review for a Rule 24(a) denial). Other cases in which this court applied the substantive requirements of Rule 24(a) without articulating a standard of review include: *People v. Ham*, 734 P.2d 623 (Colo.1987); *O'Hara Group Denver v. Marcor Housing Sys.*, 197 Colo. 530, 595 P.2d 679 (1979); *Dillon Cos. v. City of Boulder*, 183 Colo. 117, 515 P.2d 627 (1973).

6. It is clear that a review of the *timeliness* factor under Rule 24(a) is governed by an abuse of discretion standard. *NAACP v. New York*, 413 U.S. 345, 366, 93 S.Ct. 2591, 37 L.Ed.2d 648 (1973); *Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997); *Ozee v. Am. Council on Gift Annuities*, 110 F.3d 1082, 1095 (5th Cir.1997); *Meek v.*

*Metro. Dade County*, 985 F.2d 1471, 1477 (11th Cir.1993).

7. *Cotter v. Mass. Ass'n of Minority Law Enforcement Officers*, 219 F.3d 31, 34 (1st Cir.2000); *Twelve John Does*, 117 F.3d at 575; *Int'l. Paper Co. v. Jay*, 887 F.2d 338, 344 (1st Cir.1989); *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir.1989).

8. Some have even held that a clearly erroneous standard should apply. *See e.g., Meek*, 985 F.2d at 1477 (holding that generally, a denial of intervention under rule 24(a) is reviewed for error, with subsidiary factual findings subject to review for clear error).

9. *Twelve John Does*, 117 F.3d at 576 (holding that "because the balance between keeping class litigation manageable and allowing affected parties to be adequately heard turns on a myriad of case-specific facts, the abuse-of-discretion standard governs most of the related issues"); *Int'l Paper*, 887 F.2d at 343 (noting that "although Rule 24(a)(2) seems to provide for three simple and distinctive requirements, application of the Rule involves the pragmatic balancing of a range of factors that arise in varying factual situations"); *United States v. Hooker Chem. & Plastics Corp.*, 749 F.2d 968, 983, 991 (2d Cir.1984) (noting that the substantive requirements of Rule 24(a) are not bright lines, but ranges and that "the necessity of having the 'feel of the case' in deciding these motions, and other considerations essential under a flexible reading of Rule 24(a)(2), particularly in government enforcement actions, are precisely those which support an abuse of discretion standard of review").

review have concluded that Rule 24(a) requirements concern questions of law which are freely reviewable. *United States v. Union Elec. Co.*, 64 F.3d 1152, 1158 (8th Cir. 1995); *SEC v. Prudential Sec., Inc.*, 136 F.3d 153, 157 (D.C.Cir.1998); *Alameda Water*, 9 F.3d at 90; *Mothersill D.I.S.C. Corp. v. Petroleos Mexicanos, S.A.*, 831 F.2d 59, 62 (5th Cir.1987); *Waller v. Fin. Corp. of Am.*, 828 F.2d 579, 582 (9th Cir.1987); *see E–470 Pub. Highway Auth. v. The 455 Co.*, 3 P.3d 18, 22 (Colo.2000) ("Findings of fact are generally reviewed under a clear error or abuse of discretion standard, whereas conclusions of law are generally reviewed under a de novo standard.").[10]

■ We hold that a de novo standard should apply when reviewing a trial court's denial of a motion to intervene under the substantive requirements of Rule 24(a) because such requirements concern questions of law. Thus, we hold that the court of appeals properly applied a de novo standard in this case to review the trial court's denial of the Investors' motion to intervene.

### B. Substantive Requirements for Intervention Under Rule 24(a)

■ We now turn to the three substantive requirements for intervention under Rule 24(a)(2). Under that rule, an applicant may intervene as a matter of right if he has an interest relating to the transaction that is the subject of the action, his ability to protect that interest is impaired or impeded, and his interest is not adequately represented by the parties to the action. C.R.C.P. 24(a)(2).

*Interest*

The court of appeals held that the Investors had an interest relating to the transaction that was the subject of the Commissioner's civil enforcement action. *Feigin*, 992

P.2d at 679. In doing so, the court reasoned that

> it was [the] investors who were defrauded, and § 11–51–604 gives to each of them a statutory claim for the recovery of damages (not to mention a common law claim for fraud). The Commissioner, in contrast, possesses no claim for damages; he can assert a claim for damages only because § 11–51–602 authorizes him to do so when he brings an injunctive action.

*Id.* The court also noted that because the Commissioner's claim for damages under section 11–51–602 must be asserted "on behalf" of the defrauded parties, "in this sense . . . the Commissioner is acting as a fiduciary for [the] investors, and but for investors' possession of valid claims, the Commissioner could assert no claim." *Id.* Although we agree that the Investors have an interest in the Commissioner's civil enforcement action, we disapprove of the court of appeals' interpretation of section 11–51–602, to the extent that it creates a fiduciary or agency relationship between the Commissioner and defrauded investors.

In our view, the Investors' interest in the Commissioner's civil enforcement action arises from the Commissioner's authorization under section 11–51–602(2) to assert a claim for damages on behalf of defrauded investors. Section 11–51–602(2) provides that, "The securities commissioner may include in any action authorized [by this section], a claim for damages under section 11–51–604 or restitution, disgorgement, or other equitable relief on behalf of some or all of the persons injured by the act or practice constituting the subject matter of the action. . . ." § 11–51–602(2).

The Commissioner relies on *Prudential*, 136 F.3d at 153, in arguing that the Investors have no protectable interest in achieving full compensation for the harm done to them. At

10. Some courts have found a trial court's failure to provide findings or reasons for its denial of a Rule 24(a) motion to be determinative. In *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1202, n. 8. (5th Cir.1992), the court held that a de novo standard of review should apply because the trial court failed to provide findings on the three intervention factors of Rule 24(a)(2) when denying the motion to intervene. Similarly, the court in *Cot-*

*ter*, 219 F.3d at 34 held that where a trial court makes no findings and gives no reasons for its denial and such findings and reasons cannot be inferred, there is nothing to which to give deference under an abuse of discretion standard. We decline to adopt this reasoning and do not find the absence of findings or reasons for a Rule 24(a) denial to be determinative.

issue in *Prudential* was a consent decree between the SEC and Prudential under which Prudential instituted a process to resolve the claims of approximately 340,000 investors whom Prudential had allegedly defrauded. *Id.* at 154. Participation in the claims resolution process under the decree was completely voluntary, and investors who chose not to participate could pursue other legal remedies without restriction. *Id.* at 155. Participants in the claims resolution process were required to release Prudential from future liability and those submitting claims to binding arbitration were required to acknowledge that the arbitrator's award would be binding. *Id.* Several defrauded investors submitted claims to Prudential under the consent decree and, after receiving initial settlement offers, consented to binding arbitration. *Id.* at 155–56. However, when the claims resolution process was nearly complete, those investors filed a motion to intervene in the enforcement of the consent decree, claiming that Prudential had intentionally understated damages due to them under the consent decree. *Id.* The court held that because the investors were not intended beneficiaries of the consent decree, they had no enforcement rights. *Id.* at 159. In reaching this conclusion, the court reasoned that "a third party to a consent decree is not an intended beneficiary unless the parties intended that a third party should receive a benefit which might be enforced in the courts." *Id.* at 159. Since the consent decree clearly indicated that third parties had no enforcement rights, the court concluded that the investors had no right to intervene in the proceedings between the SEC and Prudential to enforce the decree.

In light of Colorado's flexible approach to determining whether a person possesses an interest in intervening under Rule 24(a)(2), we find the D.C. Circuit's rigid standards in *Prudential* unpersuasive. We have previously held that the existence of an interest under Colorado's Rule 24(a)(2) should be determined in a liberal manner. *O'Hara,* 197 Colo. at 541, 595 P.2d at 687. We have also held that the interest requirement should not be viewed formalistically. *Id.* (noting that efforts to extract substance from the term "interest" are likely to fail). The interest

factor, unlike the practical harm and adequate representation factors, should thus be viewed as a prerequisite rather than as a determinative criterion for intervention. *Id.*

We therefore reject the formalistic approach taken by the *Prudential* court, and decline to consider whether the Investors in this case constitute intended beneficiaries or whether they had any enforcement rights with respect to the Commissioner's civil enforcement action. Rather, we hold that the Investors claim a sufficient interest in the Commissioner's civil enforcement action to satisfy Rule 24(a)(2)'s interest requirement because the compensation provided for by the claims process under the Stipulation was sought on their behalf, and because the Investors were clearly the beneficiaries of that process.

In so holding, however, we do not conclude, as the court of appeals did, that a fiduciary or agency relationship exists between the Commissioner and the Investors. Nothing in the plain language of the Colorado Securities Act (the "Act"), at sections 11–51–101 to –908, 3 C.R.S. (2000), dictates such a relationship. Instead, the plain language of the Act and its statutory scheme reveal that the legislature intended the Commissioner to have an enforcement role that is independent of investors victimized by those against whom enforcement is sought. The purpose of the Act is to "protect investors and maintain public confidence in securities markets while avoiding unreasonable burdens on participants in capital markets." § 11–51–101(2), 3 C.R.S. (2000). As such, the Act is remedial in nature. *Id.* To effectuate its remedial purpose, the Act authorizes the Commissioner to enforce its provisions. §§ 11–51–601 to –602. Section 11–51–602, under which the Commissioner negotiated the Stipulation at issue in this case, authorizes the Commissioner to restrain or preliminarily enjoin a person from engaging in any act or practice constituting a violation of the Act. In doing so, the Commissioner "may include in any action ... a claim for damages under section 11–51–604 or restitution, disgorgement, or other equitable relief on behalf of some or all of the persons injured by

the act or practice constituting the subject matter of the action." § 11–51–602(2). Thus, the Commissioner's discretion to claim damages on behalf of defrauded investors under this section is supportive of his enforcement role. Therefore, the court of appeals' conclusion that "but for investors' possession of valid claims, the Commissioner could assert no claim," is incorrect. *See Feigin,* 992 P.2d at 679.

Section 11–51–604, to which section 11–51–602 refers, is entitled "Civil Liabilities," and provides defrauded investors with a right of action to recover losses resulting from the acts or practices of a person who has violated the Act. § 11–51–604, 3 C.R.S. (2000). That the Commissioner may include a claim for damages on behalf of defrauded investors in a civil enforcement action under section 11–51–602 does not diminish the rights of a defrauded investor under section 11–51–604. Thus, the court of appeals improperly implied a fiduciary or agency relationship between the Commissioner and the Investors in this case, first when it held that because the Commissioner's claim for damages under section 11–51–602 must be asserted "on behalf" of the defrauded parties, the Commissioner was acting as a fiduciary for the investors, and also when it likened the Commissioner to a "class representative, [or] agent and representative for all of the investors." *Feigin,* 992 P.2d at 679, 681.

### Impairment

Under Rule 24(a)(2), once an applicant has established an interest in the subject of the action, he must then "demonstrate that the disposition of that action may, as a practical matter, impair or impede the applicant's ability to protect that interest." 6 James Wm. Moore et al., *Moore's Federal Practice* § 24.03(3)(a) (3d ed.2000). The Commissioner argues that the Investors' ability to protect their interests would be neither impaired nor impeded if they were denied intervention. We agree.

An intervenor's interest is impaired if the disposition of the action in which intervention is sought will prevent any future attempts by the applicant to pursue his interest. *Id.* Thus, courts in other jurisdictions have held that where there were alternative forums in which to bring a suit, an intervenor is neither impaired nor impeded in his ability to protect his interests under Rule 24(a)(2). *See e.g., Commodity Futures Trading Comm'n v. Heritage Capital Advisory Servs.,* 736 F.2d 384, 386 (7th Cir.1984) (holding that intervenors' interests were not impaired by a government enforcement action because they had alternative forums, including a direct suit in which to pursue their claims). Courts have also held that the entry of a consent judgment resolving a civil enforcement action will not have a res judicata, collateral estoppel or stare decisis effect on a private action concerning the same matter. *SEC v. Everest Mgmt. Corp.,* 475 F.2d 1236, 1239 (2d Cir. 1972) (holding that an SEC enforcement action does not preclude investors with regard to res judicata or collateral estoppel from bringing their own suit for damages); *SEC v. Canadian Javelin Ltd.,* 64 F.R.D. 648, 650 (S.D.N.Y.1974) (holding that the entry of consent judgments resolving an SEC enforcement action has neither a res judicata, collateral estoppel, nor stare decisis effect on a private party action against the same defendants); *see Int'l Paper,* 887 F.2d at 345 (holding that "the stare decisis problem is greatly lessened where there are parties already in the suit whose position on the issues is the same as the absent party's," and noting that there was no fundamental conflict between the intervenor and party to the action as to the construction of the laws at issue in that case). We are persuaded by the reasoning of these courts.

Under the Stipulation at issue in this case, defrauded investors are entitled, but not required, to file applications for claims pursuant to the claims resolution process. The Stipulation provides that the rights of an investor who elects not to accept payment under the claims resolution process will not be impaired or otherwise affected by the Stipulation. Thus, investors choosing not to participate in the claims resolution process provided for by the Stipulation may nonetheless bring a private cause of action under section 11–51–604. In fact, the Investors in this case filed a private suit against the defendants for damages. No res judicata, collateral estoppel or stare decisis effect would

impact such an action because the Investors are not parties to the civil enforcement action brought by the Commissioner, nor are they in privity with the Commissioner in bringing that suit.[11]

■ We reject the court of appeals' reasoning that "if a sufficient number of investors should elect to accept the benefits of the proposed agreement, the ability of other investors to protect their interests may well be impaired" because the numerosity requirement for a class action under C.R.C.P. 23 might be defeated and because a reduction in numbers would increase per capita costs and fees associated with bringing suit. *Feigin,* 992 P.2d at 681. Such factors do not give rise to impairment or impediment to a party's interests under Rule 24(a)(2). *See Everest,* 475 F.2d at 1239 (rejecting the argument that if intervention is denied, intervenors will bear financial burden of bringing a private suit because this was "not the sort of adverse practical effect contemplated by Rule 24(a)(2)"). We conclude, therefore, that because the Investors possess a private right of action that is not affected by res judicata, collateral estoppel or stare decisis, their interests would neither be impaired nor impeded for purposes of Rule 24(a)(2) if they were denied intervention.

*Inadequate Representation*

The third requirement for intervention as a matter of right under Rule 24(a)(2) is that the intervenor's interest be inadequately represented by the parties to the action. C.R.C.P. 24(a)(2).[12] The Investors argue that because the Commissioner sought relief for only "some or all" of the defrauded investors, he does not represent the interests of all of the Investors. The Investors also argue that the Commissioner does not adequately represent their interests because the government's interest can never coincide with private interests. We disagree.

■ Wright and Miller describe the current test for inadequate representation under federal Rule 24(a)(2) in the following manner:

> If the interest of the absentee is not represented at all, or if all existing parties are adverse to him, then he is not adequately represented. If his interest is identical to that of one of the present parties, or if there is a party charged by law with representing his interest, then a compelling showing should be required to demonstrate why this representation is not adequate.

7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1909, 318–19 (2d ed.1986).[13] Under this test, we find that the Commissioner adequately represented the Investors' interests. The Investors' interest in being compensated for their losses coincides directly with Commissioner's interest in protecting inves-

11. *See O'Neill v. Simpson,* 958 P.2d 1121, 1123 n. 4, 5 (Colo.1998) (noting that res judicata only bars subsequent claims by identical parties based on the same claim for relief, and that collateral estoppel only applies where the party against whom estoppel is being asserted has been a party to or is in privity with a party in a prior proceeding). The Investors' private suit would not be impaired by the doctrine of stare decisis because the civil enforcement action was resolved by Stipulation, and therefore does not involve a decision by a court on a specific issue of law. Moore, *supra,* § 24.03(3)(b) (noting that an intervenor's interest can be impaired or impeded if, "[u]nder the doctrine of stare decisis, a legal precedent is established when [the] court expressly decides a specific issue of law").

12. Having concluded that the Investors would neither be impaired nor impeded in their ability to protect their interests, we need not address this final requirement for intervention as a matter of right under Rule 24(a)(2). *See Denver Chapter,* 150 Colo. at 527, 374 P.2d at 496 ("An applicant for intervention under Rule 24(a)(2) must show both that the representation of his interest by existing parties is or may be inadequate and that the applicant is or may be bound by the judgment in the action, and neither element, standing alone, is sufficient."). However, we determine that even if the Investors in this case had met the impairment requirement, they would not be entitled to intervene as a matter of right under Rule 24(a)(2) because the Commissioner adequately represented their interests in his civil enforcement action.

13. In *Denver Chapter,* we articulated the test for inadequate representation for purposes of Rule 24(a)(2) as follows: "Inadequacy of representation is shown if there is proof of collusion between the representative and an opposing party, if the representative has or represents some interest adverse to that of the petitioner, or fails because of nonfeasance in his duty of representation." 150 Colo. at 527, 374 P.2d at 495–96.

tors from fraud in securities markets. No adversity of interests exists here. Furthermore, the Commissioner is accurately characterized as a party charged with representing the Investors' interests because the Commissioner has been designated by the legislature to enforce the Act, whose purpose is to protect investors from fraud. Thus, in the absence of a compelling showing otherwise,[14] we conclude that the Investors' interests are adequately represented by the Commissioner. Accordingly, we hold that the Investors are not entitled to intervene as a matter of right under Rule 24(a)(2) in the Commissioner's civil enforcement action.

## III. CONCLUSION

For the foregoing reasons, we hold that the court of appeals properly applied a de novo standard in reviewing the trial court's denial of the Investors' motion to intervene as a matter of right under Rule 24(a)(2). We further hold that the Investors have an interest in the Commissioner's civil enforcement action, but were neither impaired nor impeded in their ability to protect that interest. We also determine that, even if the Investors would have been impaired or impeded, they would not be entitled to intervention as a matter of right under Rule 24(a)(2) because the Commissioner adequately represents their interests. Accordingly, we reverse the court of appeals' judgment and remand the case to the court of appeals for further proceedings consistent with this opinion.

---

**14.** The Investors have raised no issues or arguments that could not be adequately represented by the Commissioner. *O'Hara,* 197 Colo. at 542–43, 595 P.2d at 688 (finding inadequate representation where the intervenor had several arguments available to it which could not be asserted by the parties to the action).