Concerning the Application for Water Rights of CHEROKEE METROPOLITAN DISTRICT in El Paso County, Colorado,

Cherokee Metropolitan District,
Applicant–Appellee,

and

Upper Black Squirrel Creek Ground Water Management District and Drieeenheid Kapitaal Vof, Opposers–Appellees,

v.

MERIDIAN SERVICE METROPOLITAN DISTRICT, Intervenor–Appellant.

and

Steven J. Witte, Division Engineer, Water Division No. 2 and Dick Wolfe, State Engineer, Appellees Pursuant to C.A.R. 1(e).

Concerning the Application for Water Rights of Cherokee Metropolitan District in El Paso County, Colorado.

Cherokee Metropolitan District,
Applicant–Appellant,

v.

Meridian Service Metropolitan District,
Opposer–Appellee/Cross–Appellant,

and

Upper Black Squirrel Creek Ground Water Management District and Drieeenheid Kapitaal Vof, Opposers–Appellees,

and

Steven J. Witte, Division Engineer, Water Division No. 2 and Dick Wolfe, State Engineer, Appellees Pursuant to C.A.R. 1(e).

Nos. 10SA379, 11SA197.

Supreme Court of Colorado,
En Banc.

Dec. 12, 2011.

Jackson Kelly PLLC, Martha P. Whitmore, Denver, Colorado, Law Office of Kevin Donovan, LLC, Kevin F. Donovan, Colorado Springs, Colorado, Attorneys for Cherokee Metropolitan District.

Trout, Raley, Montaño, Witwer & Freeman, P.C., Lisa M. Thompson, Peter D. Nichols, Robert V. Trout, Denver, Colorado, Attorneys for Upper Black Squirrel Creek Ground Water Management District.

W.B. Schroeder Law Office, LLC, Wayne B. Schroeder, Boulder, Colorado, Attorneys for Meridian Service Metropolitan District.

No briefs filed on behalf of Drieeenheid Kapitaal Vof, Steven J. Witte, Division Engineer, Water Division No. 2 and Dick Wolfe, State Engineer.

Justice MÁRQUEZ delivered the Opinion of the Court.

In this joint opinion, we address two direct appeals from the same water court proceedings (Case No. 98CW80). First, we review the water court's denial of Meridian Service Metropolitan District's ("Meridian") motion to intervene in a declaratory judgment action between Cherokee Metropolitan District ("Cherokee") and Upper Black Squirrel Creek Ground Water Management District ("UBS") (Case No. 10SA379). Second, we address the water court's grant of declaratory relief in that case while Meridian's appeal of its motion to intervene was pending before this court (Case No. 11SA197). We hold that

Meridian had a right to intervene under C.R.C.P. 24(a). We therefore reverse the water court's denial of Meridian's motion to intervene in Case No. 10SA379, vacate the grant of declaratory relief in Case No. 11SA197, and remand for further proceedings consistent with this opinion.

## I. Facts and Procedural History

Cherokee and Meridian are government bodies charged with providing water to residents and landowners within their boundaries. UBS is a government body charged with managing ground water withdrawals from the Upper Black Squirrel Creek designated ground water basin. Cherokee sources its water from the UBS basin, and Meridian sources its water from both the Denver Basin and the UBS basin. The underlying water action before us (Case No. 98CW80) began in 1998 as litigation between Cherokee and UBS over Cherokee's water rights in the UBS basin. In 1999, Cherokee and UBS settled the litigation by entering a Stipulation and Release. The Stipulation required Cherokee to deliver certain wastewater returns back into the UBS basin for recharge of the aquifer.

In 2003, Cherokee and Meridian entered into an intergovernmental agreement ("IGA") to build a new wastewater treatment facility. According to the IGA, wastewater from both Cherokee and Meridian would be treated at the facility, and the return flows would go back into the UBS basin. In 2008, pursuant to the IGA, Cherokee and Meridian jointly applied for a replacement plan [1] with the Colorado Ground Water Commission to obtain replacement credit for the return flows from the wastewater treatment facility into the UBS basin, under Case No. 08GW71. This replacement credit would allow Cherokee to divert additional water from the UBS basin in exchange for the return flows. The

IGA allocates a portion of this additional water to Meridian.

Upon learning of the Cherokee/Meridian Replacement Plan Application in late 2008, UBS filed a statement of objection with the Colorado Ground Water Commission and moved to dismiss the Replacement Plan Application, under Case No. 08GW71. The Ground Water Commission denied UBS's motion to dismiss, and UBS filed a trial brief urging the Commission not to approve the Cherokee/Meridian Replacement Plan Application.

In 2009, UBS reopened the underlying water action with Cherokee (Case No. 98CW80) by filing simultaneous motions for a preliminary injunction and for declaratory judgment.

In its motion for declaratory judgment, UBS argued that the pending Replacement Plan filed with the Ground Water Commission would violate the 1999 Stipulation because Cherokee was obligated under the Stipulation to use the wastewater return flows to recharge the UBS aquifer and, therefore, could not use the return flows to generate replacement credit. UBS asked the water court to enter a declaratory judgment that, pursuant to the 1999 Stipulation, the wastewater returns could not be claimed by Cherokee *"or any other person"* as replacement credit in the Replacement Plan Application and that Cherokee could not seek to increase its diversions from the UBS basin through the Replacement Plan.

The preliminary injunction motion sought to prohibit Cherokee "from claiming, or authorizing any other person to claim" the wastewater returns as replacement credit in the Replacement Plan Application until a final unappealable ruling in the declaratory judgment proceedings. The water court granted the preliminary injunction.[2] As a result, the Ground Water Commission stayed

---

1. Replacement plans are required for withdrawals of designated ground water from an overappropriated aquifer. An applicant is required to replace the amount of designated ground water withdrawn with other water in such a way that no material injury occurs to other water rights. Colorado Ground Water Commission Rules and Regulations for the Management and Control of

Designated Ground Water, 2 Colo.Code Regs. § 410–1:5.6.1 (2010).

2. The water court issued this preliminary injunction prior to Meridian's motion to intervene. The order granting the preliminary injunction has not been appealed. Accordingly, we do not review the order.

the Replacement Plan Application in Case. No. 08GW71 pending the final outcome of the declaratory judgment proceedings.

In 2010, pursuant to Rule 24(a), Meridian moved to intervene as of right in the underlying water action between UBS and Cherokee (Case No. 98CW80) to challenge both the preliminary injunction and the motion for declaratory judgment. Meridian argued that the preliminary injunction and the motion for declaratory judgment directly affected its water rights embodied in the Replacement Plan and the IGA and that intervention was the only way it could protect those rights. The water court denied Meridian's motion, holding that, because Meridian was not a party to the 1999 Stipulation between UBS and Cherokee, it had no interest in the interpretation of the Stipulation. The court noted that UBS has no contractual obligations to Meridian and that Meridian's proper recourse is instead to hold Cherokee accountable for its obligations under the IGA. The water court concluded that "[b]ecause Cherokee recognizes its responsibilities to Meridian, it will adequately represent Meridian's interests in order to satisfy its commitment(s) to Meridian."

Meridian appealed the water court's ruling to this court in Case No. 10SA379. However, while Meridian's appeal was pending, the declaratory judgment proceedings continued without Meridian's participation,[3] and the water court entered an order granting UBS's motion for declaratory judgment. Cherokee then appealed that order to this court in Case No. 11SA197. We address both Meridian's and Cherokee's appeals in this joint opinion.

## II. Meridian's Motion to Intervene

■ We review the denial of a motion to intervene as of right de novo. *Feigin v. Alexa Grp., Ltd.*, 19 P.3d 23, 28 (Colo.2001). Me-

ridian moved to intervene under Rule 24(a)(2),[4] which provides that:

> Upon timely application anyone shall be permitted to intervene in an action … when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

■ Intervention as of right is a fact-specific determination. "Rule 24 should be liberally interpreted to allow, whenever possible and compatible with efficiency and due process, issues related to the same transaction to be resolved in the same lawsuit and at the trial court level." *Feigin*, 19 P.3d. at 26. Although the declaratory judgment proceedings here continued after Meridian's motion to intervene was denied, we evaluate the motion to intervene on the record that existed at the time it was filed. With these overarching considerations in mind, we turn to an analysis of whether Meridian had a right to intervene.

### *Interest*

■ Under the first part of Rule 24(a)(2), the party seeking intervention must claim an interest relating to the property or transaction which is the subject of the action. Colorado takes a "flexible approach" to determining whether a party has claimed such an interest. *Feigin*, 19 P.3d at 29. The existence of an interest "should be determined in a liberal manner." *Id.* The interest prong " 'is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.' " *O'Hara Grp. Denver, Ltd. v. Marcor Hous. Sys., Inc.*, 197 Colo. 530, 541, 595 P.2d 679, 687 (1979) (quoting *Smuck v. Hobson*, 408 F.2d 175, 179 (D.C.Cir.1969)).

---

**3.** Meridian did not request a stay of the declaratory judgment proceedings.

**4.** Meridian also moved to intervene, in the alternative, under Rule 24(b) (permissive intervention) and section 37–92–304(3), C.R.S. (2011) (allowing a party to intervene in a water court proceeding "upon a showing of mistake, inadver-

tence, surprise or excusable neglect or to support a referee's ruling"). Because we hold that Meridian had a right to intervene under Rule 24(a), we do not address permissive intervention under Rule 24(b). Meridian does not rely on section 37–92–304(3) in this appeal.

■ Here, Meridian claims an interest relating to the property or transaction that is the subject of the declaratory judgment action, namely, its interest in ensuring that its claimed rights to reuse the return flows from the planned wastewater treatment facility are not precluded by the water court's interpretation of the 1999 Stipulation between Cherokee and UBS.[5] Specifically, Meridian claims a vested right, in addition to its contractual rights under the IGA, to reuse the return flows from the first use of its Denver Basin water. The water treatment plant is a joint project between Meridian and Cherokee. Meridian asserts that, in consideration for its contributions to the treatment plant, the IGA allocates to Meridian a share of any additional water diverted from the UBS Basin under the Replacement Plan, the share to be determined by the amount of water Meridian sends into the wastewater treatment plant.[6] Meridian also claims a vested right to reuse the return flows from the first use of its Denver Basin water, and that it must intervene to protect that interest. In short, Meridian claims an interest in ensuring that its rights to reuse the return flows from the wastewater treatment plant, via a share of the additional water diverted from the UBS basin under the Replacement Plan, are not precluded by the water court's interpretation of the Stipulation between Cherokee and UBS.

Moreover, Meridian's interest relates to the subject matter of the underlying declaratory judgment action. UBS seeks a declaration that the wastewater returns from the Cherokee/Meridian plant "cannot be claimed or used by Cherokee *or any other person* as replacement credit on Cherokee's Replacement Plan Application" and that "Cherokee cannot seek to increase diversions from [the UBS basin] through its Replacement Plan Application" (emphasis added). Resolution of the declaratory judgment action could thus

jeopardize the Replacement Plan Application and could result in findings or conclusions regarding the rights to the return flows from the wastewater treatment plant. In addition, the preliminary injunction has effectively halted Meridian's ability to move forward with its Replacement Plan Application before the Ground Water Commission in Case. No. 08GW71.

UBS argues that Meridian does not have an interest in the declaratory judgment action because Meridian is not a party to the Stipulation and the declaratory judgment action concerns only the Stipulation. We are not persuaded.

UBS relies on *Hulst v. Dower*, 121 Colo. 150, 213 P.2d 834 (1949), to support its argument that Meridian has no interest in the declaratory judgment action. In *Hulst*, we held that parties did not have a right to intervene in part because they were not parties to the contract at issue in the underlying action. *Id.* at 154–55, 213 P.2d at 836. However, *Hulst* was based on a prior version of Rule 24(a) that imposed formalistic requirements on the existence of an interest. Unlike the current version of Rule 24(a), the prior version required that the intervenor potentially be "bound" by the judgment or have an interest in property being disposed of in the underlying proceeding. C.R.C.P. 24(a) (1941) (amended effective 1970). Moreover, the would-be intervenors in *Hulst* had an agreement with the plaintiff in the underlying action whereby the plaintiff would pay them a certain portion of his recovery from the defendants. 121 Colo. at 155, 213 P.2d at 836. Thus, the would-be intervenors' sole interest in the underlying action was to ensure that the plaintiff maximized his monetary recovery; they claimed no interest in the subject matter of the suit itself. *Id.* Thus, the analysis in *Hulst* is not dispositive of the issue before us today.[7]

---

5. We express no opinion here regarding the control or ownership of return flows from the wastewater facility, as those issues are not before us in this appeal.

6. The IGA states that "a proportionate allocation of resulting newly available Black Squirrel Replacement Water will be made by Cherokee for

Meridian based upon the ratio of Cherokee's influent flow to that of Meridian...."

7. Several commentators have noted that, because of the amendments to Rule 24(a), case law based on the prior version of the Rule is no longer dispositive on the issue of whether a party claims an interest. 4 Sheila K. Hyatt & Stephen A. Hess, *Colorado Practice Series, Civil Rules Anno-*

In *Feigin,* our most recent discussion of intervention as of right under the current Rule 24(a), we rejected "formalistic" constraints on the existence of an interest. 19 P.3d at 29. In that case, we expressly rejected any requirement that the would-be intervenors prove that they had enforcement rights under, or were intended beneficiaries of, the underlying agreements. *Id.* In any event, we have previously allowed intervention as of right where the intervenor was not a party to the underlying contract. *O'Hara Grp. Denver, Ltd. v. Marcor Hous. Sys., Inc.,* 197 Colo. 530, 538–43, 595 P.2d 679, 685–89 (1979) (holding that a bank that lent money to a real estate buyer had a right to intervene in a dispute over two real estate contracts between buyer and seller; rejecting formalistic reasoning of the trial court that the bank had no interest because it was not a party to the contracts).

In sum, we hold that Meridian satisfies the first part of Rule 24(a)(2) because it claims an interest in protecting its rights to reuse the return flows from the wastewater treatment plant, and this interest relates to the underlying declaratory judgment action between UBS and Cherokee because that action challenges Meridian's ability to reuse the return flows.

### Impairment

■ Under the second part of Rule 24(a)(2), the party seeking intervention must show that it is so situated that the disposition of the underlying action may as a practical matter impair its ability to protect its interest. In contrast to the prior version of the rule, which required an intervenor to be potentially "bound" by the disposition of the underlying action, the current version of Rule 24(a) allows intervention of right where a party's interest may be impaired "as a practical matter." *Compare* C.R.C.P. 24(a) (1941), *with* C.R.C.P. 24(a) (2011).

Here, the declaratory judgment action may as a practical matter impair Meridian's ability to protect its rights to reuse the return flows from the wastewater treatment plant.

UBS requested that the water court issue a declaratory judgment that "[w]astewater returns delivered by Cherokee into the [UBS Basin] ... cannot be claimed or used by Cherokee *or any other person* as replacement credit on Cherokee's Replacement Plan Application" and that "Cherokee cannot seek to increase diversions from [the UBS basin] through its Replacement Plan Application" (emphasis added). Accordingly, a favorable ruling for UBS could potentially preclude Meridian from reusing the return flows for replacement credit under the Replacement Plan Application.

Thus, Meridian's situation is distinguishable from the would-be intervenors' situation in *Feigin.* There, the would-be intervenors were defrauded investors who wanted to challenge a settlement reached by the Colorado Securities Commissioner. *Feigin,* 19 P.3d at 25. The investors were permitted to opt out of the settlement entered into by the Commissioner and had a statutory right to bring a private cause of action against the same defendants. *Id.* at 30–31. Therefore, we held that the investors did not have a right to intervene because their interests would not be impaired if they were denied intervention. *Id.* at 31. Here, Meridian cannot opt out of a declaratory judgment prohibiting "Cherokee or any other person" from claiming the wastewater returns as replacement credit, nor can it bring an independent challenge to the water court's interpretation of the Stipulation.

UBS argues that Meridian can adequately protect its interests by suing Cherokee for breach of the IGA. But such a lawsuit would simply provide Meridian with a retrospective monetary remedy in the event Cherokee breaches the IGA by abandoning the Replacement Plan. It would not provide Meridian the opportunity to be heard regarding the interpretation of the 1999 Stipulation as it may affect Meridian's rights under the Replacement Plan and the IGA.

Therefore, we hold that Meridian satisfies the second part of Rule 24(a)(2) because the

*tated* Rule 24 (4th ed. 2005); 7C Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, *Federal Practice and Proce-* *dure* § 1907 (3d ed. 1997) (explaining the similar amendments to Fed.R.Civ.P. 24(a)).

disposition of the declaratory judgment action may as a practical matter impair Meridian's interest in protecting its rights to reuse the return flows from the wastewater treatment plant.

### Inadequate Representation

■ Under the third part of Rule 24(a)(2), a party may intervene unless the party's interest is adequately represented by existing parties. In *Feigin*, we applied Wright and Miller's test for determining whether a would-be intervenor's interest is adequately represented. 19 P.3d at 31. We again apply that test here. Wright and Miller divide the adequacy of representation inquiry into three categories:

[1] If the interest of the absentee is not represented at all, or if all existing parties are adverse to the absentee, then there is no adequate representation. [2] On the other hand, if the absentee's interest is identical to that of one of the present parties, or if there is a party charged by law with representing the absentee's interest, then a compelling showing should be required to demonstrate why this representation is not adequate. [3] *But if the absentee's interest is similar to, but not identical with, that of one of the parties, a discriminating judgment is required on the circumstances of the particular case, although intervention ordinarily should be allowed unless it is clear that the party will provide adequate representation for the absentee.*

7C Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, *Federal Practice and Procedure* § 1909 (3d ed. 1997) (emphasis added). Wright and Miller suggest that in the third category, "all reasonable doubts should be resolved in favor of allowing the absentee ... to intervene...." *Id.*

Here, Meridian falls into the third category. Meridian's interest in protecting its rights to reuse the return flows from the wastewater treatment plant is similar to, but not identical with, Cherokee's interests in the underlying declaratory judgment action. Like Meridian, Cherokee presumably wants to go forward with the Replacement Plan and does not want the water court to grant the declaratory judgment requested by UBS. Ultimately, however, both Cherokee and Meridian have separate water rights to protect. Thus, Cherokee and Meridian do not have the kind of relationship as to make their interests identical. *Cf.* Wright & Miller, *supra*, § 1909 (giving the following examples of situations where an intervenor has an "identical" interest with an existing party: a class action; formal representation by a fiduciary; a corporation or labor union speaking for its members; and a government body representing the public in antitrust, school desegregation, or environmental litigation).

Furthermore, there are reasonable doubts about whether Cherokee will adequately represent Meridian. Cherokee itself has stated that it does not believe it can adequately represent Meridian. Cherokee acknowledges that it could choose to make certain concessions to UBS to settle or limit litigation with UBS. In addition, as UBS itself contends, Cherokee and Meridian may be involved in future litigation over the IGA. Thus, Cherokee may shape its arguments in the declaratory judgment proceedings accordingly. Finally, resolution of the declaratory judgment action could generate findings or conclusions regarding the rights to the return flows from the wastewater treatment plant. In this context, Cherokee's interests may directly conflict with Meridian.

Therefore, we hold that the third part of Rule 24(a)(2) is satisfied because Meridian's interests are not adequately represented by Cherokee. Because all three parts of Rule 24(a)(2) have been satisfied, we hold that Meridian had a right to intervene in the declaratory judgment proceedings and we reverse the water court's order denying Meridian's Motion to Intervene.

### III. The Declaratory Judgment Order

After the water court denied Meridian's motion to intervene, the proceedings continued and the trial court granted UBS's motion for declaratory judgment. Cherokee has appealed from that merits ruling. As discussed above, we hold that Meridian had a right to participate in the declaratory judgment proceedings but was denied the opportunity to

participate. The proceedings must be reopened to give Meridian an opportunity to be heard. *Cf. Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 135–36, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967) (holding that the trial court erred in denying certain parties the right to intervene and concluding that "the entire merits of the case must be reopened to give [those parties] an opportunity to be heard as of right as intervenors"). Accordingly, we vacate the water court's declaratory judgment order without reaching the merits.

### IV. Conclusion

For the foregoing reasons, we reverse the water court's order denying Meridian's motion to intervene in Case No. 10SA379, vacate the water court's order granting declaratory judgment in Case No. 11SA197, and remand for proceedings consistent with this opinion.