2013 CO 53

**CONCERNING THE APPLICATION FOR UNDERGROUND WATER RIGHTS, CHANGE OF WATER RIGHTS, AND PLAN FOR AUGMENTATION OF CHEROKEE METROPOLITAN DISTRICT, EL PASO COUNTY, COLORADO.**

Cherokee Metropolitan District, Applicant-Appellee

and

Frances Booker; Wayne E. Booker; Farmer Pipeline Co., LLC; Dan Farmer; Edna Farmer; Jerry Farmer; Joe Farmer, Jr.; Teresa Farmer; and Upper Black Squirrel Creek Ground Water Management District, Opposers-Appellees:

and

Dick Wolfe, State Engineer, and Steven J. Witte, Division Engineer, Water Division No. 2, Appellees Pursuant to C.A.R. 1(e):

v.

Felt Monson & Culichia LLC, James G. Felt, and James W. Culichia, Intervenors-Appellants.

Supreme Court Case No. 12SA313

Supreme Court of Colorado, En Banc.

July 1, 2013

Attorneys for Intervenors-Appellants: Kennedy Childs P.C., Ronald Nemirow, Christopher P. Brown, Denver, Colorado

Justice EID delivered the Opinion of the Court.

¶ 1 Cherokee Metropolitan District ("Cherokee"), a government body responsible for providing water to its landowners and resi-

dents, is participating in the underlying litigation in order to minimize loss of its water rights in some of its wells. In a separate legal malpractice action, Cherokee sued its former attorneys James Felt and James Culichia, and their firm Felt, Monson & Culichia, LLC (collectively "FMC"), alleging that FMC's negligence led to the loss of water rights that is the subject of the underlying litigation. FMC sought to intervene in the action pursuant to C.R.C.P. 24(a) and (b), arguing that intervention was necessary in order to minimize damages it may suffer in the legal malpractice case. The water court denied FMC's motion to intervene.

¶ 2 We find that, despite their adversity in the legal malpractice action, Cherokee and FMC share an identical interest in the underlying water rights litigation—namely, minimizing the loss of Cherokee's water rights. Because FMC has not made a compelling showing that Cherokee may not adequately represent the interest that it shares with Cherokee, we affirm the water court's denial of FMC's motion to intervene as of right. Similarly, we dismiss FMC's appeal of the water court's denial of FMC's motion for permissive intervention because the water court did not abuse its discretion.

## I.

¶ 3 The subject of the underlying litigation in this case is Cherokee's interest in Cherokee wells 14–17. Cherokee's use of wells 14–17 is governed by its Stipulation and Release negotiated with Upper Black Squirrel Creek Ground Water Management District. The agreement requires Cherokee to apply to make its conditional water rights in the wells absolute "on or before two years after the first diversion" from the wells.

¶ 4 On April 28, 2006, Cherokee put well 17 to beneficial use, but it did not apply to make the conditional rights absolute until at least April 30, 2008. FMC represented Cherokee as its water counsel during this time. Before its representation by FMC, Cherokee also failed to timely file applications for wells 14–16, which Cherokee had previously put to beneficial use. Because Cherokee did not file timely applications, the water court held that Cherokee had abandoned its rights in wells 14–17.

¶ 5 In October 2010, following the water court's decision, Cherokee sued FMC for legal malpractice. Cherokee claimed that FMC had negligently failed to timely file the application for well 17. Cherokee alleged that its damages should be measured by the value of the water rights it would lose in well 17 as determined in the water court case.

¶ 6 Cherokee also appealed the water court's ruling to this court, arguing in part that it had not entirely abandoned its interests in wells 14–17. We affirmed the trial court's ruling that, by failing to timely file the applications, Cherokee had abandoned the portion of its conditional rights that it had failed to make absolute. *See Cherokee Metro. Dist. v. Upper Black Squirrel Creek Designated Ground Water Mgmt. Dist.*, 247 P.3d 567, 569 (Colo.2011). However, we interpreted the water court's ruling to mean that Cherokee had "abandoned only the portions of its conditional rights to wells 14–17 for which it had untimely filed to make absolute." *Id.* We returned the case to the water court to determine the remaining question of "whether Cherokee should receive a finding of reasonable diligence for the remaining conditional portions or whether the stipulated decree mandates that those amounts should be considered abandoned." *Id.* at 575.

¶ 7 Following the appeal, the water court entered an order, without holding a hearing or making any factual findings, concluding that "Cherokee has abandoned the conditional water rights for Wells 14, 15, 16, and 17 in their entirety." Cherokee appealed to this court. Rather than deciding the case at that point, we issued an order on June 4, 2012, finding that the water court order lacked sufficient findings of fact and conclusions of law to enable appellate review. Accordingly, we retained jurisdiction over Cherokee's appeal of the decision but remanded for the limited purpose of making findings on whether Cherokee had entirely abandoned its conditional rights in wells 14–17.

¶ 8 In August 2012, after the limited remand to the water court, FMC moved to intervene in the underlying water case pur-

suant to C.R.C.P. 24(a) and (b). No party opposed the motion. The water court denied the motion to intervene with the following order: "Intervention is denied see *Stone v. Satriana*, 41 P.3d 705 (Colo.2002) and *People ex. rel. Dunbar v. South Platte Water Conservancy District*, 139 Colo. 503, 343 P.2d 812 (1959)."

¶ 9 FMC now appeals to this court and asks us to reverse the water court's order denying intervention. Because FMC has not made a compelling showing that Cherokee may not adequately represent Cherokee and FMC's identical interest, we affirm the water court's denial of its motion to intervene as of right. Similarly, we dismiss FMC's appeal of the water court's denial of FMC's motion for permissive intervention because the water court did not abuse its discretion.

## II.

■ ¶ 10 As a preliminary matter, we address the source of our jurisdiction over this appeal. Cherokee appealed the water court's order conclusion that "Cherokee has abandoned the conditional water rights for Wells 14, 15, 16, and 17 in their entirety." On June 4, 2012, we issued an order explaining that the trial court's final order lacked sufficient findings to enable appellate review. As a result, we retained jurisdiction but remanded the case to the water court for the limited purpose of making further findings on the issue of abandonment. After the case was remanded, FMC filed its motion to intervene, which the water court denied. Pursuant to our retained jurisdiction over the underlying water case, we now consider FMC's appeal of the water court's denial of intervention.

## III.

### A.

■ ¶ 11 Next, we consider the water court's denial of FMC's motion to intervene as of right, which we review de novo. *See Cherokee Metro. Dist. v. Meridian Serv. Metro. Dist.*, 266 P.3d 401, 404 (Colo.2011). C.R.C.P. 24(a) allows intervention as of right

[u]pon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Because we find that FMC's interest is "adequately represented by existing parties," we need not consider the other requirements set forth in C.R.C.P. 24(a) in order to conclude that the water court did not err in denying FMC's motion to intervene as of right.

■ ¶ 12 "Intervention as of right is a fact-specific determination." *Meridian*, 266 P.3d at 404. Moreover, while the goal of intervention is to consolidate related issues into the same lawsuit, *id.* according to the Advisory Committee on Civil Rules, the federal counterpart to C.R.C.P. 24(a) was written to also avoid "a cluttering of lawsuits with multitudinous useless intervenors."[1] Benjamin Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I)*, 81 Harv. L.Rev. 356, 403 (1967). Therefore, the rule retained the component restricting intervention if "existing parties adequately represent [applicant's] interest." Fed. R.Civ.P. 24(a)(2); *see also* C.R.C.P. 24(a)(2) (restricting intervention if "the applicant's interest is adequately represented by existing parties"). In order to determine the adequacy of representation, we have repeatedly applied the following three categories:

(1) If the interest of the absentee is not represented at all, or if all existing parties are adverse to the absentee, then there is no adequate representation. (2) On the other hand, if the absentee's interest is identical to that of one of the present parties, or if there is a party charged by law with representing the absentee's interest, then a compelling showing should be

---

1. We find authority interpreting a corresponding federal rule to be instructive because the Colorado Rules of Civil Procedure were modeled on the federal rules. *Garrigan v. Bowen*, 243 P.3d 231, 235 (Colo.2010).

required to demonstrate why this representation is not adequate. (3) But if the absentee's interest is similar to, but not identical with, that of one of the parties, a discriminating judgment is required on the circumstances of the particular case, although intervention ordinarily should be allowed unless it is clear that the party will provide adequate representation for the absentee.

*Meridian*, 266 P.3d at 407 (emphasis omitted) (quoting 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1909 (3d ed. 1997)); *accord Feigin v. Alexa Grp., Ltd.*, 19 P.3d 23, 31 (Colo. 2001). In applying this analysis, however, we note that "representation may be adequate even though it is not formal." Kaplan, *supra*, at 403; *see also* Fed.R.Civ.P. 24, advisory committee's note (1966 Amendment) ("The representation whose adequacy comes into question under the amended rule is not confined to formal representation.... A party to an action may provide practical representation to the absentee seeking intervention although no such formal relationship exists between them, and the adequacy of this practical representation will then have to be weighed.").

¶ 13 Careful consideration of the facts reveals that FMC falls into the second category of the adequate representation test. In order to prevent useless intervention, we consider the parties' interests in the case at hand "with due attention to the character of the litigation and to its condition at the time of the application to intervene." Kaplan, *supra*, at 403. Further, even though two parties may have different motivations for an interest, the interest may nevertheless be identical. *See Wash. Elec. Co-op., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 98 (2d Cir.1990) ("[A] putative intervenor's interest is not inadequately represented merely because its motive to litigate is different from that of a party to the action.").

¶ 14 We find that, while the motives of FMC and Cherokee for litigating may be different, FMC's interest in minimizing damages for a potential malpractice judgment against itself "coincides directly" with Cherokee's interest in minimizing damage to its water rights. *Feigin*, 19 P.3d at 31; *cf. Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 180 (2d Cir.2001) (finding interests to be identical when law firm's "recovery upon the charging lien is predicated upon a favorable result for [plaintiff] on the claims against [defendant]"). In the first appeal of the underlying water rights litigation, we held that, by failing to timely file the applications, Cherokee had abandoned the portion of its conditional rights that it had failed to make absolute. *Cherokee Metro. Dist.*, 247 P.3d at 569. However, we agreed with the water court that Cherokee had abandoned "only the portions of its conditional rights to wells 14–17 for which it had untimely filed to make absolute." *Id.* We remanded the case to the water court so that it could determine the remaining question of "whether Cherokee should receive a finding of reasonable diligence for the remaining conditional portions or whether the stipulated decree mandates that those amounts should be considered abandoned." *Id.* at 575. Cherokee's interest in this portion of the case is to minimize the loss of water rights it experienced due to abandonment. FMC, if allowed to intervene, would seek to minimize the loss of the exact same water rights in order to reduce the damages it caused by its alleged legal malpractice—that is, in failing to timely apply to make the conditional rights absolute. Therefore, Cherokee has the same interest that FMC would have in the case, even though the two are adverse parties in a legal malpractice action. *Compare Meridian*, 266 P.3d at 407 (finding that would-be intervenors fell into the third category, rather than the second, because although they wanted the same general outcome as one of the original parties, they had distinct water rights to protect and therefore did not have identical interests), with *Bottoms v. Dresser Indus., Inc.*, 797 F.2d 869, 872 (10th Cir. 1986) (finding interests identical, even though plaintiff and proposed intervenor had a dispute over entitlement to royalties, because both "ha[d] an overwhelming interest in maximizing the amount of royalties [defendant] owe[d]"), and *British Airways Bd. v. Port Auth. of N.Y. and N.J.*, 71 F.R.D. 583, 585 (S.D.N.Y.1976) ("While there may be an adversity of interests between [defendant] and

the proposed intervenors in some contexts, it is simply speculation to suppose that any such divergence in viewpoint is applicable on the facts of this case.").

¶ 15 Because the interest FMC seeks to represent is identical to Cherokee's interest in the current dispute, FMC must make a compelling showing why Cherokee's representation would not be adequate in order to justify intervention as of right. *See Meridian,* 266 P.3d at 407 ("[I]f the absentee's interest is identical to that of one of the present parties … then a compelling showing should be required to demonstrate why this representation is not adequate."). FMC has made no such showing. While FMC generally alleges that Cherokee may tailor its litigation strategy in this case to maximize recovery against FMC in the subsequent malpractice action, FMC has presented no specific example of something Cherokee has done or failed to do to protect their common interest. FMC does not even present a logical hypothetical decision adverse to FMC's interest that Cherokee may make in the future. Because FMC has not made such a compelling showing, it has no claim for intervention as of right.

¶ 16 For example, there has been no indication that Cherokee seeks to settle the matter to FMC's detriment. *Cf. Meridian,* 266 P.3d at 407 (noting that original party "acknowledge[d] that it could choose to make certain concessions to [opponent] to settle or limit litigation with [opponent]"); *United Airlines, Inc. v. Schwesinger,* 805 P.2d 1209, 1209, 1211 (Colo.App.1991) (allowing intervention as of right when plaintiff—employee had reached settlement with defendant that may or may not include amounts his employer would be entitled to recover from defendant because plaintiff had no incentive to seek recovery of those amounts). Of course settlement is always a theoretical possibility. However, FMC has produced no evidence that would suggest that Cherokee could or would enter into a settlement in order to artificially inflate its damages in the underlying water case. On the contrary, if it did decide to settle the case, any settlement would seek to reduce the extent of its loss of water rights due to abandonment. Such a settlement would in turn benefit FMC in the malpractice action by limiting its potential liability. *Cf. United Airlines, Inc.,* 805 P.2d at 1211 (finding that settlement may not take into account the proposed intervenor's interest). Thus, there is no serious possibility that a settlement—if it did in fact occur— would be adverse to FMC's interests.

¶ 17 Nor does FMC claim that Cherokee has failed to initiate litigation to protect their common interest or to appeal an adverse ruling in order to mitigate damages. *Cf. Satriana,* 41 P.3d at 712 (allowing for the possibility that a malpractice defendant's interests could be inadequately represented by a failure to appeal because "[a] failure to appeal can never be a failure to mitigate damages caused by malpractice at trial"); *Ams. United for Separation of Church and State v. City of Grand Rapids,* 922 F.2d 303, 306 (6th Cir.1990) ("[A] decision not to appeal by an original party to the action can constitute inadequate representation of another party's interest."); *United States v. Am. Tel. & Tel. Co.,* 642 F.2d 1285, 1294 (D.C.Cir.1980) (allowing intervention for the limited purpose of appeal when government's interest in an expeditious trial diverged from intervenor's interest in protecting work product). In fact, Cherokee has zealously litigated the interest it shares in common with FMC for nearly five years and has already appealed adverse rulings to this court on two occasions. *Cf. Miller v. Silbermann,* 832 F.Supp. 663, 673 (S.D.N.Y.1993) (finding no indication that an existing party would not vigorously defend proposed intervenors' position when that party "ha[d] defended this action for over three years, and the [i]ntervenors ha[d] made no showing that defense counsel ha[d] handled this case poorly or that [the party] ha[d] somehow 'sold the [intervenors] out' as part of their defense"). The hypothetical possibility that Cherokee's litigation decisions could be poor or somehow adverse to FMC's interests is not sufficient to justify intervention as of right. Such speculation cannot justify lawyers intervening in an underlying action merely to protect themselves from the consequences of a malpractice action.

¶ 18 Moreover, FMC has "raised no issues or arguments that could not be adequately represented by" Cherokee. *Feigin*, 19 P.3d at 32 n.14; *see also O'Hara Grp. Denver, Ltd. v. Marcor Hous. Sys., Inc.*, 197 Colo. 530, 542, 595 P.2d 679, 688 (1979) (allowing intervention as of right when intervening "[b]ank ha[d] available to it several arguments which could not be asserted by [original party]"); *see also* Wright & Miller, *supra* § 1909 (instructing courts to "consider whether the absentee is likely to have anything to say that will be of value"); *cf. Meridian*, 266 P.3d at 407 (finding that the two districts had distinct water rights to protect, which implies that the intervenor may raise separate legal issues or arguments, and acknowledging that the original party "stated that it does not believe it can adequately represent [the intervenor]"). Rather, FMC apparently seeks to intervene in order to monitor and second-guess Cherokee's litigation decisions to ensure that Cherokee adequately mitigates its damages. *Cf. Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) ("Where parties share the same ultimate objective, differences in litigation strategy do not normally justify intervention."). Because FMC has no potential legal arguments to contribute to the case, its participation would be redundant and unlikely to add anything but delay to a case that has been ongoing for five years.

¶ 19 While these examples do not represent a comprehensive list of circumstances under which representation may be inadequate, they do demonstrate that FMC has failed to show us any concrete example of how it might be inadequately represented. *Cf. Butler, Fitzgerald & Potter*, 250 F.3d at 180 ("Although perhaps not an exhaustive list, we generally agree with the holdings of other courts that evidence of collusion, adver-

sity of interest, nonfeasance, or incompetence may suffice to overcome the presumption of adequacy."). Consequently, FMC is not entitled to intervention as of right. Although the two may be adverse parties in the malpractice action, FMC and Cherokee have an identical interest in this case—minimizing the amount of water rights Cherokee loses. Because FMC has presented only speculation that Cherokee might not adequately represent this common interest, it has failed to make the compelling showing that Cherokee's representation of its interest may be inadequate as required by the second category in the test set forth in *Meridian*, 266 P.3d at 407, and *Feigin*, 19 P.3d at 31. Accordingly, we conclude that FMC is not entitled to intervention as a matter of right.

### B.

¶ 20 Finally, we consider FMC's claim of permissive intervention under C.R.C.P. 24(b). C.R.C.P. 24(b) provides as follows:

> Upon timely application anyone may be permitted to intervene in an action ... when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

In the past, we have held that "[i]f permission [to intervene] was permissive only, denial thereof is not appealable unless the court abuses its discretion." *Grijalva v. Elkins*, 132 Colo. 315, 318, 287 P.2d 970, 972 (1955) (internal quotation marks omitted). Thus, in order to determine whether denial of permissive intervention is a final appealable order, we must first determine whether the trial court abused its discretion.[2] "It can seldom, if

---

2. This test requires us to review the merits of FMC's claim. Thus, it may not be "a very effective or useful limitation of appellate jurisdiction." Wright & Miller, § 1923 (quoting *Levin v. Ruby Trading Corp.*, 333 F.2d 592, 594 (2d Cir.1964)). It merely creates a semantic distinction but can create redundancy in the trial court. *See Plain v. Murphy Family Farms*, 296 F.3d 975, 980 (10th Cir.2002) ("If the district court denies [a Fed. R.Civ.P. 24] motion, the proper procedure is to pursue an immediate appeal, and not to file repetitive motions pestering the district court.

This is true regardless of how the motions are labeled where the substance of the motions and purported justification for intervention remain unchanged."); *Korioth v. Brisco*, 523 F.2d 1271, 1279 n. 26 (5th Cir.1975) ("[A] much better practice would be simply to regard any denial of a motion to intervene as a final order, and, when the intervention sought is permissive and no abuse of discretion is shown, to affirm the denial."). However, because no party has challenged this framework, we will not revisit it at this time.

ever, be shown that the trial court abused its discretion in denying the permissive right to intervene." *Grijalva*, 132 Colo. 315, 319, 287 P.2d 970, 972 (1955).

¶ 21 While the water court did not explicitly state its reason for denying FMC's motion for permissive intervention, the court cited *People ex rel. Dunbar v. South Platte Water Conservancy District*, 139 Colo. 503, 343 P.2d 812 (1959). FMC concedes that this case stands for the proposition that a new party cannot be introduced on a writ of error. We interpret the water court's citation to mean that, while FMC may not literally be seeking to intervene on a writ of error, it has attempted to join the suit very late in the proceedings. The suit has been ongoing for five years, and this is the third appeal to this court. FMC has offered no explanation why it could not have intervened earlier; and, if allowed to intervene, nothing would prohibit FMC from asking for continuances or attempting to re-litigate issues, thereby delaying the proceedings even more. Thus, even assuming FMC could meet the other requirements of C.R.C.P. 24(b), we cannot conclude that the water court abused its discretion in denying FMC's request for permissive intervention at this late date. Because the water court did not abuse its discretion, under *Grijalva* the denial of permissive intervention was not a final appealable order, and we therefore dismiss this appeal.

### III.

¶ 22 Because FMC has not made a compelling showing that Cherokee may not adequately represent Cherokee and FMC's identical interest, we affirm the water court's denial of its motion to intervene as of right. Similarly, we dismiss FMC's appeal of the water court's denial of FMC's motion for permissive intervention because the water court did not abuse its discretion.

Justice MÁRQUEZ dissents, and Justice BOATRIGHT and Justice RICE join in the dissent.

**3.** No party has challenged the timeliness of

Justice MÁRQUEZ, dissenting.

¶ 23 I respectfully dissent because I believe that the water court erred in denying FMC's motion to intervene as of right under C.R.C.P. 24(a). In my view, FMC's interest is similar to, but not identical with, Cherokee's interest in the underlying litigation. Thus, this case falls under the third category of the test for adequate representation set forth in *Cherokee Metropolitan District v. Meridian Service Metropolitan District*, 266 P.3d 401, 407 (Colo.2011). That category of the test requires a discriminating judgment on the circumstances of the particular case and provides that intervention ordinarily should be allowed unless it is clear that the party will provide adequate representation for the absentee. In my view, it is not clear that Cherokee will provide adequate representation for FMC given that Cherokee and FMC are adverse parties in a legal malpractice action that is closely related to the underlying litigation. Therefore, I would reverse the water court's order denying FMC's motion to intervene as of right.

### I.

¶ 24 "Rule 24 should be liberally interpreted to allow, whenever possible and compatible with efficiency and due process, issues related to the same transaction to be resolved in the same lawsuit and at the trial court level." *Id.* at 404 (quoting *Feigin v. Alexa Grp., Ltd.*, 19 P.3d 23, 26 (Colo.2001)). Rule 24(a)(2) provides:

> Upon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

¶ 25 Here, FMC satisfies the first two parts of Rule 24(a)(2).[3] First, FMC has an interest in minimizing any damages award entered against it in the malpractice action. Cherokee alleges in its malpractice suit

FMC's motion.

against FMC that its damages should be measured by the value of the water rights it would lose in well 17, as determined by the litigation in this case. *See* maj. op. ¶ 5. Thus, FMC has a direct interest in the outcome of this case. Second, the disposition of this action may as a practical matter impair FMC's ability to protect its interest because FMC may be precluded from arguing in the legal malpractice action that Cherokee's conduct in this case amounted to a failure to mitigate its damages. *See Stone v. Satriana,* 41 P.3d 705, 712 (Colo.2002) (holding that a legal malpractice plaintiff has no duty to appeal the underlying action because injured parties generally have no affirmative duty to mitigate a tortfeasor's damages). At issue, then, is the third part of Rule 24(a)(2)—whether FMC's interest is adequately represented by Cherokee.

## II.

¶ 26 The burden of showing that representation is inadequate "should be treated as minimal." *Trbovich v. United Mine Workers of Am.,* 404 U.S. 528, 538 n.10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972). In *Feigin,* we applied Wright and Miller's test for determining whether a would-be intervenor's interest is adequately represented. 19 P.3d at 31; *see also Meridian,* 266 P.3d at 407; maj. op. ¶ 12.

¶ 27 As we noted in *Meridian,* Wright and Miller divide the adequacy of representation inquiry into three categories:

[1] If the interest of the absentee is not represented at all, or if all existing parties are adverse to the absentee, then there is no adequate representation. [2] On the other hand, if the absentee's interest is identical to that of one of the present parties, or if there is a party charged by law with representing the absentee's interest, then a compelling showing should be required to demonstrate why this representation is not adequate. [3] But if the absentee's interest is similar to, but not identical with, that of one of the parties, a discriminating judgment is required on the circumstances of the particular case, although intervention ordinarily should be allowed unless it is clear that the party will

provide adequate representation for the absentee.

7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1909 (3d ed. 2007).

¶ 28 Under this test, the showing required to establish inadequate representation varies depending on the extent to which the would-be intervenor's interest coincides with the interest of an existing party. On the one hand, if the interests conflict or fail to coincide at all, we conclude that the representation is inadequate as a matter of law. At the other extreme, if the interests are identical, then a "compelling showing" is required to demonstrate why the representation is inadequate. However, where the interests are similar but not identical, then the circumstances of the particular case must be considered; moreover, we generally favor intervention in this category, ordinarily allowing it unless the representation will clearly be adequate.

¶ 29 The majority characterizes Cherokee's interest as "minimizing damage to its water rights." Maj. op. ¶ 14. It then concludes that FMC's interest in minimizing damages for a potential malpractice judgment "coincides directly" with Cherokee's interest, such that "Cherokee has the same interest that FMC *would have in this case." Id.* (emphasis added). Because the majority perceives these interests as identical, the majority concludes that FMC falls into the second category of the Wright and Miller test, and therefore that FMC must make a "compelling showing" why Cherokee's representation would not be adequate. *Id.* ¶ 15.

¶ 30 In my view, the majority compares Cherokee's and FMC's interests without giving due consideration to the related legal malpractice action, in which Cherokee's and FMC's interests clearly do not coincide, and in which damages are premised on the outcome of this litigation. I agree that FMC's interest in this litigation is to minimize any damages award entered against it in the legal malpractice action. However, although Cherokee presumably desires to minimize the loss of its water rights in this action, its core interest is not that narrow; rather, its

interest is in providing water to its landowners and residents. FMC's and Cherokee's interests overlap somewhat because both interests would be furthered by minimizing the loss of Cherokee's water rights under its stipulation with Upper Black Squirrel Creek Ground Water Management District. *See id.* ¶ 14. Yet Cherokee's interest also would be furthered by seeking damages from FMC to cover its loss of those water rights, and it has no interest at all in minimizing its potential damages against FMC for legal malpractice. Thus, Cherokee's and FMC's interests cannot be deemed identical.

¶ 31 FMC therefore falls into the third category because FMC's interest, although similar, is not identical to Cherokee's. As such, "intervention ordinarily should be allowed unless it is clear that the party will provide adequate representation for the absentee." *Meridian*, 266 P.3d at 407 (quoting Wright, Miller & Kane, *supra*). In my view, it is not clear that Cherokee will provide adequate representation of FMC's interest because it does not necessarily have the incentive to do so, depending on how this litigation proceeds. Cherokee may ultimately decide that its interest is better served by shifting its effort and resources from minimizing its losses in this case to recovering those losses from FMC in the malpractice action. *See Satriana*, 41 P.3d at 712–13 (noting that litigation is "uncertain and costly" and holding that a legal malpractice plaintiff need not appeal the underlying case to win full damages against the defendant attorneys). Such a decision would further Cherokee's interest, yet undermine FMC's interest.

¶ 32 At a minimum, under the circumstances presented here, there are reasonable doubts about whether Cherokee will adequately represent FMC's interest. As we noted in *Meridian*, Wright and Miller suggest that in the third category, "all reasonable doubts should be resolved in favor of allowing the absentee ... to intervene." 266 P.3d at 407 (quoting Wright, Miller & Kane, *supra*). Therefore, I would conclude that FMC is entitled to intervene as a matter of right. Accordingly, I respectfully dissent.

I am authorized to state that Justice RICE and Justice BOATRIGHT join in this dissent.